IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW S. MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:11-cv-610 |
| v. | ) |
| | ) Chief Magistrate Judge Lisa Pupo |
| MARK PATRICK FLAHERTY, *et al.,* | ) Lenihan |
| | ) |
| Defendants. | ) ECF No. 10 |
| | ) |
| | ) |
| | ) |

## OPINION

LENIHAN, M.J.

Currently pending before the Court in this civil rights action is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Mark Patrick Flaherty, Terry Matuszak, and Allegheny County (ECF No. 10). Plaintiff instituted this lawsuit on May 10, 2011, under 42 U.S.C. § 1983, alleging a violation of his constitutional rights under the Due Process Clause of the Fourteenth Amendment. Plaintiff also asserts a *Monell* claim against Allegheny County. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

### I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff alleges the following facts in his Complaint, which the Court accepts as true for purposes of the motions to dismiss. On or about June 9, 2010, a vacancy existed in the office of constable in the Third Ward, Sewickley Borough, in Allegheny County, Pennsylvania. (Compl. ¶7, ECF No. 1.) Upon learning of the vacancy, Plaintiff initiated the process for appointment to

the vacant constable position, pursuant to the applicable state law, 44 Pa. Cons. Stat. Ann. §7121. (*Id.* at ¶8.) Plaintiff contends that on June 9, 2010, he presented a petition to appoint him to serve as constable for the unexpired term of the Sewickley vacancy, signed by the requisite number of qualified electors residing in Sewickley Borough, to Defendant Terry Matuszak, an employee of the Allegheny County Controller. (*Id.* at ¶¶ 9-10.)

Plaintiff further alleges that the Allegheny County Controller was responsible for processing such petitions through the Administrative Judge of the Allegheny County Court of Common Pleas. (*Id.* at ¶11.) Plaintiff contends that Defendant Matuszak refused to process the petition to appoint him to the Sewickley vacancy, and consequently, Plaintiff was misled to believe that he needed the approval of a Sewickley magisterial district judge as a prerequisite to processing his petition, when no such requirement existed as a matter of law or fact. (*Id.* at ¶13.)

Thereafter, Plaintiff obtained the approval of the Sewickley magisterial district judge, and subsequently learned that such approval was not necessary to the process of his appointment to the Sewickley vacancy. Upon learning this, Plaintiff informed Defendant Matuszak, but Matuszak still refused to process Plaintiff's petition. (*Id.* at ¶14.)

Plaintiff then contacted the office of the President Judge of the Allegheny County Court of Common Pleas, and it is alleged that an individual with that office instructed him to retrieve his petition from the Controller's Office and process it himself, and immediately thereafter, on September 1, 2010, Plaintiff retrieved his petition. (*Id.* at ¶15.) Subsequently, Plaintiff avers that Defendant Matuszak continued to impede his appointment to the Sewickley vacancy by "concocting some sort of residency impediment" which was eventually resolved in his favor. (*Id.* at ¶16.)

On December 2, 2010, the Administrative Judge of the Allegheny County Court of

Common Pleas issued an Order Nisi appointing Plaintiff to serve as constable for the Third Ward, Sewickley Borough. (*Id.* at ¶17.) The only remaining requirement in order for Plaintiff to commence his service as constable was for him to take an oath and be sworn in as constable. (*Id.* at ¶18.) According to Plaintiff, Defendant Matuszak, as part of his responsibilities as an employee of the Controller's office, was required to notify Plaintiff that he was scheduled to be sworn in as constable on January 20, 2011; however, Matuszak allegedly refused to provide Plaintiff with such notice. (*Id.* at ¶19.) Consequently, Plaintiff contacted the office of the President Judge and he was sworn in as constable on February 18, 2011. (*Id.* at ¶20.)

Thereafter, on May 10, 2011, Plaintiff instituted the present lawsuit under 28 U.S.C. §1983, claiming that the acts of Defendants were undertaken with the purpose and intent of depriving Plaintiff of his rights under the United States Constitution and of the right not to be deprived of property without due process of law in violation of the Fourteenth Amendment. (*Id.* at ¶¶ 5, 26.) As a result of Defendants acts and omissions, he claims to have suffered damages, which include: "indignity, loss of property and his right to serve as constable, loss of income, and . . . ridicule before his peers, and . . . depriv[ation] of his constitutional rights to be free and clear of the above deprivations . . . ." (*Id.* at ¶21.) Plaintiff further claims that the Defendants were deliberately indifferent to his rights and claims and those of the citizens of Allegheny County, in that Allegheny County, through the Controller, Defendant Mark Patrick Flaherty, knew or should have known that Matuszak was not properly supervised/trained, and that these failures were due to a custom or policy of indifference to the necessity for adequate supervision and training. (*Id.* at ¶¶22-24.) Plaintiff has sued Defendants Matuszak and Flaherty in the individual and official capacities. Plaintiff seeks to hold Defendant Allegheny County liable under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

In response to Plaintiff's complaint, Defendants filed a Motion to Dismiss (ECF No. 10) on August 19, 2011. Plaintiff filed a response and brief in opposition to the motion to dismiss. Thus, this motion is now ripe for disposition.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S.Ct.1937, 1949 (May 18, 2009) (citing *Twombly, supra*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then

> "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 550 U.S. at 555, ¶ n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler,* 578 F.3d at 210-11 (citing *Iqbal,* 129 S.Ct. at 1949). Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211 (citing *Iqbal,* 129 S.Ct. at 1950). To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id.* (citing *Phillips* at 234-35). In applying this plausibility standard, the reviewing court makes a context-specific inquiry, drawing on its judicial experience and common sense. *Id.* (citing *Iqbal,* 129 S.Ct. at 1950).

Thus, the legal standard remains the same in the following respect—when considering a motion to dismiss under Rule 12(b)(6), district courts must accept as true the factual allegations in the complaint and its attachments, and must draw all reasonable inferences construed in the light most favorable to the plaintiffs. *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citation omitted). In so doing, a district court may not consider matters extraneous to the pleadings; however, "'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (internal quotations omitted); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192 (3d Cir.1993) (matters of public record)).

## III. ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Therefore, to state a claim for relief under §1983, Plaintiff must demonstrate both that the Defendants were acting under color of state law and that a constitutional violation was directly caused by the Defendants' conduct. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Where a plaintiff in a Section 1983 claim alleges a procedural due process violation, his claim is predicated upon the denial of a constitutionally protected property or liberty interest. *Id.* at 1256 (citing U.S. Const. amend. XIV, §1; *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976); *Carter v. City of Phila.,* 989 F.2d 117, 119-20 (3d Cir. 1993)).

In the case at bar, Defendants challenge whether sufficient facts have been pled to establish a plausible constitutional violation under the Due Process Clause of the Fourteenth Amendment.[1] In support, Defendants advance several arguments. Initially, Defendants argue that the Complaint fails to state a claim for supervisory liability against Defendant Flaherty, as it fails to allege any facts to show his personal involvement in the alleged misconduct. Next Defendants argue that Plaintiff's *Monell* claim against Allegheny County should be dismissed

---

[1] In their motion to dismiss, Defendants do not challenge the "state actor" requirement. Therefore, the Court assumes, solely for purposes of this motion, that Defendants are state actors.

6

because Plaintiff fails to identify any specific policy or custom which violates his constitutional rights, or that any municipal policy was the direct cause of a constitutional deprivation. In addition, Defendants submit that Plaintiff's bald assertion that Allegheny County failed to adequately train and/or supervise Defendant Matuszak fails to state a claim when the individual did not violate a clearly established right.  Third, Defendants submit that Plaintiff has failed to show that he had a protected property interest in the vacant constable position under the Fourteenth Amendment, and therefore, Mitchell cannot state a claim against Defendant Matuszak, in his individual capacity.  Fourth, Defendants argue that Defendants Matuszak and Flaherty, in their individual capacities, are immune from suit under the qualified immunity doctrine.  Finally, Defendants argue that the claims against Defendants Matuszak and Flaherty in their official capacities should be dismissed as a civil rights action against a defendant in his official capacity is only against the entity of which the government official is employed.  As Defendants' argument regarding the existence of a protected property interest effectively resolves the entire case, the Court will consider that argument first.

    A.      **FOURTEENTH AMENDMENT DUE PROCESS CLAIM**

Plaintiff has clearly asserted a due process claim under the Fourteenth Amendment based on a protected property interest. (Compl. ¶26.)  Plaintiff also claims that he suffered damage to his reputation (indignity and ridicule by his peers, Compl. ¶21), which implicates a liberty interest under the due process clause.[2]  The Court will examine each of these claims below.

---

[2] What is not clear, at first blush, is whether Plaintiff is asserting a procedural or substantive due process claim.  The Court notes that Plaintiff does not assert anywhere in his complaint that he was not given notice or an opportunity to be heard, or what process was or would be due to him.  Nonetheless, the Court assumes that Plaintiff is asserting a procedural due process claim here as the asserted property and liberty interests do not implicate such "fundamental" interests so as to give rise to a substantive due process claim under the U.S. Constitution.  A substantive due process claim requires a showing that Plaintiff was deprived of a "particular quality" of property interest, one which is determined to be "fundamental" under the United States Constitution (as opposed to state law).  *See Nicholas v.*

7

**1.      Property Interest**

Plaintiff submits that he acquired a protectable property interest in the vacant constable position in the Third Ward, Borough of Sewickley, when he presented a petition to be appointed to the Sewickley vacancy, with the requisite number of signatures, to the Controller's Office on June 9, 2010.  (Compl., Count I & ¶¶8-21.)  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972).  "Such property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Piecknick,* 36 F.3d at 1256 (quoting *Roth,* 408 U.S. at 577).

In the case at bar, Plaintiff submits his entitlement to be appointed to the vacant constable position was expressly created by state statute, specifically, 44 Pa. Cons. Stat. Ann. §7121, which addresses the procedure for filling vacancies in the constable position.  According to Plaintiff, the fact that he was ultimately appointed as constable for the Sewickley vacancy "demonstrates his entitlement to that appointment months earlier, but for the abuses of power by the Defendants . . .."  (Pl.'s Opp'n Br. at 7, ECF No. 13.)   The Court disagrees with Plaintiff.

---

*Pennsylvania State Univ.*, 227 F.3d 133 (3d Cir. 2000); *see generally Albright v. Oliver*, 510 U.S. 266, 271-72 (1994). It does not extend, *e.g.*, to a public employee's interest in continued employment or a temporary suspension in that employment.  *See Nicholas*, 227 F.3d at 140 (citing to the "great majority of courts of appeals" holding that employment rights are not "fundamental" rights within the scope of substantive due process protection); *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir.  2006); *see also Cotner v. Yoxheimer*, 2008 WL 2680872, *8 (M.D. Pa. July 2, 2008) (noting that in *Hill* the Third Circuit held that public employment is not a right entitled to substantive due process protection).  Nor does Plaintiff allege that Defendants' conduct "shocks the conscience." *Schultz v. Hughesville Borough*, Civ. A. No. 4:10-cv-0262, 2011 WL 3273876, at *16 (M.D.Pa. July 29, 2011) ("To establish a substantive due process violation, the plaintiff must show the government official's conduct 'shocks the conscience.'") (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1988)) (other citations omitted).

Generally, constables in the boroughs of Pennsylvania are elected for a term of six years. 44 Pa. Cons. Stat. Ann. §§7111, 7113(a). In addition, a constable is considered an independent contractor and "not an employee of the Commonwealth, the judiciary, the township, or the county in which he works." *In re Act 147 of 1990,* 598 A.2d 985, 986 (Pa. 1991) (citations omitted). Where a vacancy arises before the expiration of a constable's term, Pennsylvania law provides the procedure for filling such a vacancy. *See* 44 Pa. Cons. Stat. Ann. §7121. In this regard, Section 7121 provides:

> When a vacancy occurs in the office of constable, regardless of the reason for the vacancy, the court of common pleas of the county of the vacancy, upon petition of not less than ten qualified electors residing in the borough, city, ward or township of the vacancy, shall appoint a suitable person, who, upon being qualified as required by law, shall serve as the constable for the unexpired term of the vacancy.

Plaintiff relies on this statute to provide the basis for creating a protectable property interest in the vacant constable position. Plaintiff's reliance on Section 7121, however, is misplaced.

Although the statutory language does provide that the court of common pleas "*shall appoint* a suitable person," the Court does not construe that language to create a *right* to a vacant constable position merely upon presentment of the petition. Rather, the statute directs the common pleas court to appoint a person who is "suitable" and "qualified as required by law." Thus, this language implies that before the common pleas court can appoint a petitioner to a vacancy, it must first determine whether the petitioner is "suitable." Therefore, the statute vests the common pleas court with discretion to decide whether a person is "suitable" for the position.

Indeed, the Pennsylvania Commonwealth Court's opinion in *In Re: Petition for Appointment of Constable Bernard E. Pender for the Second Ward of Allentown,* supports this interpretation of Section 7121. *In Re: Petition for Appointment of Constable Bernard E. Pender*

9

*for the Second Ward of Allentown,* 25 A.3d 453, 455 (Pa. Commw. Ct. 2011) (hereinafter "*Pender*"). In *Pender,* the commonwealth court specifically found that:

> [O]nce a petition to fill the vacancy is filed under 44 Pa. C.S. §7121 by 10 registered voters, it requires the court to fill the vacancy but does not require the court to fill the vacancy by the person who caused the petition to be filed. It merely sets in motion the requirement that the position is to be filled.

*Id.* at 455. The district attorney's office opposed the petitioner's appointment to the vacant constable position. *Id.* at 454. After a hearing to consider petitioner's "checkered" background, the common pleas court found the petitioner to be unsuitable. *Id.* at 456-57. On appeal, the commonwealth court found the court of common pleas did not abuse its discretion in refusing to appoint the petitioner as a constable. *Id.* at 457.

Further support is found for this Court's conclusion in *Schmidt v. Borough of Stroudsburg*, in which the district court noted that where a statute allows for discretion in selecting a person to fill a vacant position, the applicant's "expectations are 'substantially diminished' and therefore 'do not rise to the level of a property interest entitled to constitutional protection.'" *Schmidt v. Borough of Stroudsburg,* 841 F.Supp. 639, 647 n. 17 (M.D.Pa. 1993), *aff'd without op.,* 17 F.3d 1431 (3d Cir. 1994) (quoting *Bishop v. Wood,* 426 U.S. 341, 345 & n. 8 (1976)).

Thus, Section 7121 does not create a legitimate expectation of entitlement to be appointed to a vacant constable position merely upon filing a petition. Accordingly, Plaintiff's reliance on Section 7121 to create a protected property interest is misplaced.

In the alternative, Plaintiff argues that even if his right to the vacant constable position is not deemed to be created expressly by statute, the Supreme Court has recognized that property interests, for purposes of the due process clause, include not only tangible benefits, but also the

state-created right to redress of grievances.[3] (Pl.'s Opp'n Br. at 7, ECF No. 13.) Thus, Plaintiff submits that because Defendants afforded him "no redress for his grievance over the way his petition was hindered, delayed, obstructed and impeded, the Defendants have further violated [his] constitutionally protected right to seek a remedy for the intentional and deliberate delay in the processing of his petition." (*Id.*) This argument is completely devoid of merit.

First of all, the Court is left to guess as to what specific "state-created right to redress of grievances" Plaintiff is referring. No such right is pled in his Complaint, nor does he elaborate on it in his brief. To the extent Plaintiff's argument attempts to raise a claim under the Petition Clause of the First Amendment, it is equally unavailing. The Petition Clause provides in relevant part: "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "First Amendment provisions are applicable to state actors by virtue of the Due Process Clause of the Fourteenth Amendment." *Miller v. Weinstein,* Civ. A. No. 06-224. 2008 WL 4279817, at *8 (W.D.Pa. Sept. 12, 2008) (citing *Locke v. Davey*, 540 U.S. 712, 718 (2004); *United Bhd. of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 831 (1983)).

As the court of appeals explained in *Ferrone v. Onorato*:

> "At its core, the right of petition protects a personal right to bring complaints about public policy directly to officers of the government." Ronald J. Krotoszynski & Clint A. Carpenter, *The Return of Seditious Libel*, 55 UCLA L.Rev. 1239, 1246 (2008). Substantive rights under the petition clause are rarely litigated, but "the right to petition is cut from the same cloth as the other [First

---

[3] In support, Plaintiff cites *Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982), but fails to provide any argument or analysis of that case or state how it applies to the instant matter. Although the Court is not required to consider undeveloped arguments, the Court notes nonetheless that *Logan* is distinguishable on its facts and is thus inapposite. In that case, the Illinois legislature had established a statutory right to redress for discriminatory employment practices. *Id.* at 427. The *Logan* Court found a discharged government employee's right to use this state statute's adjudicatory procedures was a species of property protected by the due process clause. By contrast here, Plaintiff has failed to identify any state-created statutory right or entitlement of which he was deprived.

> Amendment] guarantees," *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), and deprivation of the right to petition mirrors the intent requirements of due process analysis. *See Pink* [*v. Lester*, 52 F.3d 73,] 76-77 [(4th Cir. 1995)] (extending Supreme Court holding that an official's negligent act does not implicate the due process clause to the First Amendment right to petition because, "[j]ust as 'deprivation' [in the Fourteenth Amendment] suggests an intentional denial, an 'abridgement' [under the First Amendment] connotes a conscious act ... and thus both should be read to imply the same degree of intent.") (referencing holding of *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

*Ferrone v. Onorato,* 298 F. App'x 190, 193 (3d Cir. 2008). In the case at bar, the only petition described in the Complaint is the petition Plaintiff submitted for appointment to the vacant constable position in Sewickley. However, the vacancy petition is not a "petition" for purposes of the Petition Clause, as it was not presented for the purpose of asserting a grievance or other complaint about the actions allegedly taken by Defendants to impede Plaintiff's appointment to the Sewickley vacancy.[4]

There is no doubt that the Petition Clause affords Plaintiff the right to seek redress of any grievances he may have over the processing of his vacancy petition. Indeed, Plaintiff exercised that right by filing this lawsuit. However, Plaintiff cannot maintain a Petition Clause claim in this lawsuit for grievances first complained of in this federal lawsuit, as Plaintiff has yet to be denied redress of such grievances.

Accordingly, for the reasons set forth above, the Court concludes that Plaintiff has failed to allege any facts which suggest a plausible claim for relief under the procedural due process

---

[4] Even more fundamentally, Plaintiff has failed to assert a Petition Clause claim or any factual allegations that would support such claim in his Complaint. Nowhere in the Complaint does Plaintiff assert that he lodged or attempted to lodge a complaint about the Defendants' alleged conduct with any government official or agency, or that he was precluded from filing a complaint or grievance, or that government officials retaliated against him for attempting to lodge a grievance or complaint about their actions. Nor does Plaintiff state how, when or in what manner Defendants denied him redress for his grievance over the way his vacancy petition was processed prior to filing this lawsuit.

clause of the Fourteenth Amendment based on a protected property interest.

### 2. Liberty Interest

Although the Supreme Court has recognized a liberty interest in one's reputation, *Ersek v. Township of Springfield,* 102 F.3d 79, 83 (3d Cir. 1996) (citing *Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971)), Plaintiff has failed to assert any argument or facts to establish such interest. Rather, Plaintiff argues, in summary fashion, that as a result of Matuszak's abuses of power, he suffered indignity and was held up to ridicule before his peers. (Pl.'s Opp'n Br. at 4 & 9, ECF No. 13.) This argument is completely undeveloped as it is lacking in any substantive or meaningful analysis, legal authority, or supporting facts. As such, Plaintiff's argument is insufficient to be considered by this Court. *Pa. Dep't of Public Welfare v. U.S. Dep't of Health & Human Servs.,* 101 F.3d 939, 945 (3d Cir. 1996) (conclusory assertions or a passing reference to an issue in a brief, unaccompanied by a substantial argument, will not suffice to bring that issue before the court) (citation omitted); *Massie v. U.S. Dep't of Housing & Urban Dev.*, Civ. A. No. 06-1004, 2007 WL 184827, at *3 (W.D.Pa. Jan. 19, 2007), *vacated in part on other grounds on reconsideration,* 2007 WL 674597 (W.D.Pa. Mar. 1, 2007) (an assertion which lacks any substantive or meaningful analysis is undeveloped and wholly inadequate) (citing *Pa. Dep't of Public Welfare, supra*).

In any event, Plaintiff's reputational liberty interest claim cannot pass muster under *Twombly*. The Complaint contains only one paragraph referring to Plaintiff's reputation and that allegation is conclusory and devoid of factual assertions from which a plausible reputational liberty interest claim can be inferred. (Compl. ¶ 21.)[5] Accordingly, the Court finds Plaintiff has failed to allege any facts to support a plausible constitutional violation to his reputation.

---

[5] The Supreme Court in *Paul v. Davis,* 424 U.S. 693, 701 (1976), established the "stigma-plus" test to properly analyze reputational liberty interests. *Municipal Revenue Servs., Inc. v. McBlain,* Civ. A. No.

### 3. Leave to Amend

In a civil rights case, a court must *sua sponte* allow a plaintiff leave to amend his or her complaint unless it would be inequitable or futile to do so. *Phillips,* 515 F.3d at 245; *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004). Based on the discussion above, the Court cannot conceive of any facts that Plaintiff could allege to state a protected property or liberty interest under the Fourteenth Amendment Due Process Claim, or a viable First Amendment claim under the Petition Clause, and thus state a plausible §1983 claim. Therefore, allowing Plaintiff to amend his Complaint would be futile. Accordingly, Plaintiff's Complaint shall be dismissed with prejudice.

### B. SUPERVISORY LIABILITY CLAIM AGAINST FLAHERTY

Since this Court has found Plaintiff has failed to show a violation of a constitutional right under the due process clause, Plaintiff's supervisory liability claim against Defendant Flaherty likewise fails. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement,* 643 F.3d 60, 72 (3d Cir. 2011) (implying that for supervisory liability to attach, there must be an underlying constitutional violation in which the supervisor actually participated or of which the supervisor had actual knowledge of and acquiesced in, or the supervisor implemented a policy or practice that created an unreasonable risk of a constitutional violation by a subordinate and supervisor's failure to change policy or employ corrective practices was the cause of the unconstitutional

---

06-4749, at *4 (E.D.Pa. Mar. 19, 2007). This test has been explained by the Third Circuit as follows: "To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). Thus, reputation alone is not an interest protected by the Due Process Clause. *See Versage v. Township of Clinton, N.J.*, 984 F.2d 1359, 1371 (3d Cir. 1993) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). To meet the "stigma" prong of the test, a plaintiff must show that the "purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Hill,*

conduct) (listing cases). Accordingly, the Court will dismiss the supervisory liability claim against Flaherty with prejudice.

  C.  **MUNICIPAL LIABILITY**

The Supreme Court recently reiterated the requirements for municipal liability in *Connick v. Thompson*:

> A municipality or other local government may be liable under this section if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (citing *Monell*, 436 U.S., at 665–683, 98 S.Ct. 2018). They are not vicariously liable under § 1983 for their employees' actions. See *id.*, at 691, 98 S.Ct. 2018; *Canton*, 489 U.S., at 392, 109 S.Ct. 1197; *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (collecting cases).
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S., at 691, 98 S.Ct. 2018; see *id.*, at 694, 98 S.Ct. 2018. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. See *ibid.*; *Pembaur, supra*, at 480–481, 106 S.Ct. 1292; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur, supra*, at 479–480, 106 S.Ct. 1292.

*Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011).

As a matter of law, a *Monell* claim against municipal defendants will not lie where a plaintiff has failed to show that he has suffered a constitutional violation at the hands of any individual employee. *Williams v. Borough of West Chester,* 891 F.2d 458, 467 (3d Cir. 1989)

---

455 F.3d at 236 (internal citations omitted). Neither the Complaint nor Plaintiff's brief in opposition to

(citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)). Since this Court has found that Plaintiff has failed to allege plausible claims for relief under the due process clause of the Fourteenth Amendment against either Matuszak or Flaherty, the dismissal of the *Monell* claim against Allegheny County is also warranted. Accordingly, the motion to dismiss the municipal liability claims against Allegheny County will be granted with prejudice.[6]

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motion to Dismiss with prejudice. An appropriate order will follow.

Dated: January 30, 2012					BY THE COURT:


						    /s/ Lisa Pupo Lenihan
						LISA PUPO LENIHAN
						Chief U. S. Magistrate Judge

cc:	All Counsel of Record
	*Via Electronic Mail*

---

the motion to dismiss contains any facts or argument establishing the elements of the "stigma-plus" test.

[6] The Defendants argue, in the alternative, that if the §1983 claims are not dismissed in their entirety, as against Defendants Matuszak and Flaherty, then the §1983 claims against Matuszak and Flaherty, in their *official capacities,* should be dismissed. In support, the Defendants submit that official capacity suits are really suits against the municipality which employs them. The Court agrees with the Defendants on this point. The Supreme Court has clearly established that official capacity suits, *i.e.,* suits against municipal officials in their official capacity, should be treated as suits against the municipality. *See Hafer v. Malo,* 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)). Moreover, "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (quoting *Graham,* 473 U.S. at 166 (quoting *Monell,* 436 U.S. at 694)). Thus, the Court will dismiss the §1983 claim against Defendants Matuszak and Flaherty in their official capacities.